UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL M. WHITE,

    Plaintiff,

v.                                           Civil No. 05-CV-10306-BC

COMMISSIONER OF               DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

benefits and supplemental security income benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 37 years of age at the time of the most recent administrative hearing and has completed a high school education. (Tr. at 357-58.) Plaintiff's relevant work history included approximately 12 years working for a steel company and four years doing valet parking. (Tr. at 86.)

Plaintiff filed the instant claims on January 27, 2003, alleging that he became unable to work on March 30, 2001. (Tr. at 58-60, 129-31.) The claims were denied initially. (Tr. at 21, 134.) In denying Plaintiff's claims, the Defendant Commissioner considered muscle/ligament disorder and fascia and disorders of the back as possible bases of disability. (*Id.*)

On December 21, 2004, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) William E. Decker, who considered the case *de novo*. In a decision dated June 10, 2005, the ALJ found that Plaintiff was not disabled. (Tr. at 9-20.) Plaintiff requested a review of this decision on June 21, 2005. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner on September 30, 2005, when the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.) On November 30, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*

2

*of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human*

*Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

### C. Governing Law

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

> or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, both require a finding of disability for the award of benefits.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three:  If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

5

20 C.F.R. §§ 404.1520, 416.920.  *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled."  *Preslar*, 14 F.3d at 1110.  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."  *Id.*  "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ."  *Id.*

**D.     Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen at the Grace Hospital emergency room in Detroit on March 16, 1998, for complaints of lower back pain due to a previous on-the-job injury.  (Tr. at 156.)  Plaintiff reported that he had been dealing with this problem for about three and one-half years.  (Tr. at 152.) The examining physician reported that Plaintiff exhibited full range of motion on examination, although Plaintiff did demonstrate some pain to palpation in the left paravertebral muscles.  Plaintiff was given medication and felt slightly improved.  The doctor's diagnoses was acute exacerbation of chronic lumbar pain secondary to chronic sprain/strain.  The doctor recommended physical therapy, massage, heat and relaxation.  (Tr. at 153.)

Plaintiff was seen again at Grace Hospital emergency room on June 15, 1999, due to a cold and an upper respiratory infection.  Plaintiff reported that he did not have a primary care physician and that he was experiencing a low grade fever, cough and increasing difficulty in breathing due to his asthma.  He was also running out of his asthma inhaler.  (Tr. at 170.)  Upon examination,

Plaintiff's blood pressure was 148/83 and pulse was 86 and regular. (Tr. at 170-71.) Plaintiff was given medications and instructed to follow up with an internal medicine clinic. (Tr. at 171.)

On March 15, 2000, Plaintiff was seen at Providence Hospital emergency room by Dr. Mark Smith for right hand and arm numbness and pain. Plaintiff reported that he had been having the pain for about a week and that it was a throbbing type of pain that shoots up into his elbow. Plaintiff's blood pressure was 133/88 and pulse was 90 and regular. Plaintiff was in no respiratory distress but did need to have a prescription for his inhaler. (Tr. at 199.) Plaintiff had some positive tenderness to palpation over the right wrist which caused some paresthesias.[1] The doctor felt that Plaintiff may have had early carpal tunnel syndrome, and he was told to follow up with the plastic surgery clinic. Plaintiff was diagnosed with acute paraesthesias of the right wrist, carpal tunnel syndrome on the right, and was instructed to take Motrin. (Tr. at 200.) Dr. Smith advised Plaintiff to remain off work until the next day and to return to work and not engage in heavy lifting. (Tr. at 201.)

On April 13, 2000, Plaintiff was seen again at Providence emergency room for cough and congestion. Plaintiff had some decreased breath sounds and a few rhonchi but no definite wheezing. The examining physician reported that Plaintiff did not appear to be having an asthma attack, and a chest x-ray was negative. The doctor diagnosed acute bronchitis. (Tr. at 216.)

On October 3, 2000, Plaintiff was seen at Botsford General Hospital emergency room with a temperature, abdominal cramping, vomiting and diarrhea. Plaintiff reported that he had been having this problem for about three days and that it was improving except for the fever. Physical examination was normal. Plaintiff was given an IV of saline, x-rays were taken, and blood was

---

[1]Paresthesia is defined as "an abnormal sensation of tingling, burning, crawling, or tickling. It occurs in some forms of neuritis, in certain abnormal conditions of the spinal cord, etc." 4 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE P-81-82.

7

drawn. Plaintiff was diagnosed with acute viral gastroenteritis which was resolving and was discharged. (Tr. at 182-83.)

Approximately one month later, Plaintiff was seen at Botsford General Hospital urgent care for chest tightness. Plaintiff reported that he felt like he was having an asthma attack the night before and that he was having chest tightness the next day. Plaintiff's blood pressure was 157/86 and pulse was 84. The examining physician reported that Plaintiff did not appear to be in acute distress, and a breathing treatment was administered along with an electrocardiogram which showed normal sinus rhythm. Plaintiff was diagnosed with exacerbation of asthma which was resolved, and he was discharged with a prescription for Albuterol. He was also advised to have further evaluation of his asthma. (Tr. at 227.)

On January 22, 2001, Plaintiff was seen at Botsford emergency room for back pain. Plaintiff stated that he had soreness in the upper left side of his back and that he had helped a friend move furniture the day before. Examination revealed some paraspinal musculature tenderness and spasm in the area of the thoracic spine on the left. Plaintiff was diagnosed with acute thoracic back strain and discharged with medication. (Tr. at 234.)

Plaintiff was again seen at Botsford emergency room on February 11, 2001, with lower abdominal pain that he had been experiencing for approximately the last 10 days. He stated that the pain was worse when he coughed or took a deep breath. Plaintiff's blood pressure was 150/83 and pulse was 88. Examination revealed a small left inguinal hernia. Plaintiff was given Tylenol for pain and advised to follow up with a surgeon. (Tr. at 238.)

In a letter dated April 10, 2001, Dr. Harris Mainster reported that he had examined Plaintiff and found that he had a left inguinal hernia and an umbilical hernia which were both easily reducible. He reported that Plaintiff also complained of gastroesophageal reflux disease and that

8

he had alternating diarrhea and constipation. Dr. Mainster recommended an EGD and colonoscopy, along with umbilical and left inguinal herniorrhaphy. (Tr. at 255.)

Plaintiff was seen again at Botsford emergency room on June 17, 2002, for chronic back pain. Plaintiff was given muscle relaxants and instructed to use hot packs on his back. (Tr. at 267-68.)

On March 26, 2003, Dr. Anjum Sadiq examined Plaintiff at the request of the Disability Determination Service. Physical examination revealed positive Phalen's and Tinel's signs on Plaintiff's right hand, however, Plaintiff was able to pick up a pencil, button clothes, tie shoelaces and make a fist. Examination of the thoracic and lumbar spine showed some curvature, but there was no tenderness or spasm. The doctor diagnosed a work-related low back injury that had been treated conservatively, but was now causing more pain, carpal tunnel syndrome on the right side, also treated conservatively, and now presenting more pain, and a history of abdominal hernia, allergies and asthma. (Tr. at 270-71.)

On April 9, 2003, Plaintiff was treated at the Botsford General Hospital emergency room for chronic back pain. Plaintiff was prescribed a muscle relaxant and was advised to make some lifestyle changes that could help his back. (Tr. at 275-77.)

Plaintiff was seen at the Hackley Community Care Center on several occasions between October 2003 and October 2004. During this time, Plaintiff was treated for diabetes, hypertension, low back pain, obesity, polyuria,[2] and major depression. These records contain notations that Plaintiff was lax in taking his medications and did not exercise. (Tr. at 307-30.)

---

[2]Polyuria is defined as "excessive urination; the passage of abnormally large amounts of urine." 4 J. E. Schmidt, M.D., ATTORNEYS' DICTIONARY OF MEDICINE P-351.

9

At the administrative hearing, Plaintiff testified that since his surgery, his hernia had not given him significant problems. (Tr. at 369.) Plaintiff testified that he could walk approximately one half mile. (Tr. at 370.) Plaintiff testified that he believed that he could stand for between 15 and 30 minutes (Tr. at 371), that he occasionally helped with grocery shopping (Tr. at 378), and that he felt that he could sit for an hour at a time before moving. (*Id.*)

At the administrative hearing, a Vocational Expert (VE) also testified. He characterized Plaintiff's prior work at the steel factory as unskilled to semi-skilled and between light and heavy in exertion. (Tr. at 361.) In response to a hypothetical question presuming a person of Plaintiff's circumstances who could stand for two hours out of eight, use his right arm for occasional handling and grasping, undertaking tasks which required the lifting of up to 20 pounds occasionally and 10 pounds more frequently, and in following relatively simple tasks, the VE identified 5500 security guard jobs, 5000 telephone solicitor jobs, 800 assembler jobs, 1000 inspector jobs, and 2500 non-construction laborer jobs consistent with these hypothetical conditions. (Tr. at 387–88.)

Approximately one month after the administrative hearing, Plaintiff underwent a psychological examination conducted at the request of the Disability Determination Service by Dr. Dennis Mulder. The doctor reported that Plaintiff described a difficult relationship with his wife. (Tr. at 346). Plaintiff reported a "wonderful" relationship with his children and that he got along well with his brother. (*Id.*) Plaintiff recounted that on an average day he would arise and get his four children off to school and that after school he helped his children with their homework. Plaintiff denied having any current hobbies, and the doctor reported that Plaintiff had an "extremely limited interest and activity level[.]" Plaintiff stated that in the evening he would watch television and play computer games. He also stated that he did some household vacuuming and cooking, but did not undertake yard work. (Tr. at 346–47.) The doctor stated that Plaintiff was

10

in contact with reality. (Tr. at 347.) Plaintiff was described as cooperative but rather subdued. Plaintiff characterized his own self-esteem as low. (*Id.*) Plaintiff was described as oriented and alert, and his speech was described as clear, coherent and fluid. (*Id.*) Plaintiff denied blackouts, delusions, hallucinations or obsessions. (*Id.*) He described feelings of hopelessness and worthlessness and stated that he did have thoughts of suicide in the past but had none recently and had no such intention for plans. (*Id.*) The doctor diagnosed a major depressive disorder of a recurrent nature and a history of alcohol abuse in partial remission. (Tr. at 350). Plaintiff's GAF score was assessed at 50 to 55.[3] (*Id.*) The doctor stated that Plaintiff's potential for gainful employment at "simple, unskilled work on a sustained and competitive basis" was "guarded [.]" (*Id.*)

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claims and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 19.) At step two, the ALJ found that Plaintiff's chronic back pain, obesity, asthma, and depression were "severe" within the meaning of the second sequential step.

---

[3] "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact and in predicting outcome. The reporting of overall [psychological, social, and occupational] functioning on Axis V can be done using the Global Assessment of Functioning (GAF) Scale." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000). A GAF Scale of 70 to 61 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships; a scale of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with co-workers); a scale of 41-50 indicates serious symptoms e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job); a scale of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

(*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (*Id.*)  At step four, the ALJ found that Plaintiff could not perform his past relevant work.  (*Id.*)  At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy.  (*Id.*)

Using the Commissioner's grid rules as a guide, the ALJ found that ". . . there are a significant number of jobs in the regional and national economy that he could perform.  Examples of such jobs include work as a security guard, a tax solicitor/interviewer, an assembler, an inspector, or a non-construction laborer."  (Tr. at 19-20.)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work.  (Tr. at 19.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claims.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

12

**2.     Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest that substantial evidence supports the findings of the ALJ. Physicians at Grace Hospital reported that Plaintiff had full range in the back, although with some discomfort. (Tr. at 153.) While Plaintiff was diagnosed with early carpal tunnel syndrome, Dr. Smith did not prohibit Plaintiff from returning to work. (Tr. at 201.) Even though Plaintiff was later diagnosed with tenderness and spasm of the thoracic spine, Plaintiff was discharged with medication, and no further treatment was deemed necessary. (Tr. at 234, 267-68, 275-77.) While the Commissioner's examining physician found abnormalities in Plaintiff's right hand, Plaintiff was nonetheless able to undertake a series of dexterity exercises. (Tr. at 270.) At the administrative hearing, Plaintiff testified that his previous hernia surgery caused him no significant lingering problems, that he could walk one half mile, stand for 15 to 30 minutes at a time and sit for an hour at a time. (Tr. at 369-71.)

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that were appropriately consistent with the objective medical findings contained in the medical records available to the ALJ, as well as the findings and assessments of Plaintiff's treating physicians. *See Sias v. Sec'y of Health & Human Servs.*, 861

F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Social security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In addition, when weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.

1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999). Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

Records of the Hackley Community Care Center also indicate that Plaintiff failed to consistently take prescribed medication and follow instructions regarding exercise. (Tr. at 307-30.) In this circuit, it is well-settled that "[a]n impairment that can be remedied by treatment will not serve as a basis for a finding of disability." *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967), *cert. denied*, 389 U.S. 1060, 88 S. Ct. 797, 19 L. Ed. 2d 864 (1968). The Commissioner's regulations provide for a denial of benefits where a claimant fails to follow prescribed treatment. *Young v. Califano*, 633 F.2d 469, 472-73 (6th Cir. 1980). Similarly, it has been held in this district that the failure to follow a prescribed course of treatment which could restore the ability to work is a proper ground for the denial of benefits. *Hamilton v. Sec'y of Health & Human Servs.*, No. 91-CV-73589, 1992 WL 346304 (E.D. Mich. August 25, 1992) (Rosen, J.).

Thus, in order to receive benefits, an individual must follow treatment prescribed by his physician if the treatment will restore the ability to work, unless there is an acceptable reason for the failure to follow the treatment. 20 C.F.R. § 404.1530; *Awad v. Sec'y of Health & Human Servs.*, 734 F.2d 288 (6th Cir. 1984); *Fraley v. Sec'y of Health & Human Servs.*, 733 F.2d 437 (6th Cir. 1984). When an impairment can reasonably be controlled, or is reasonably amenable to treatment, it cannot serve as a basis for a finding of disability. *Young*, 633 F.2d at 472-73; *Mefford v. Gardner*, 383 F.2d 748, 761 (6th Cir. 1967). The Commissioner must show that some course of action was specifically prescribed by claimant's physician. Mere recommendations, suggestions or abstract opinions by a doctor are not enough. *Cassidy v. Schweiker*, 663 F.2d 745, 749 (7th Cir.

15

1981); *Schena v. Sec'y of Health and Human Servs.*, 635 F.2d 15, 19 (1st Cir. 1980). In contrast to the plaintiff in *Fraley v. Sec'y of Health & Human Servs.*, 733 F.2d 437 (6th Cir. 1984), the Plaintiff here presents no medically related justification for his failure to consistently take his medications. Nor are the defects in the administrative record, found in *Sparks v. Sec'y of Health & Human Servs.*, 117 F.R.D. 604 (S.D. Ohio 1987), present in this case. Therefore, I suggest that Plaintiff's failure to consistently follow medical directives serves as an independent bases for a finding of nondisability.

As to Plaintiff's claims of disabling mental impairments, the evidence in this case falls considerably short of that found in this circuit sufficient to uphold a finding of disability. *Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988); *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991); *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992). I suggest, instead, that the administrative record in this case is much more consistent with those cases in this circuit finding that allegations of disabling mental impairments failed to justify the award of benefits. *Foster v. Bowen*, 853 F.2d 483, 491 (6th Cir. 1988); *Vaughn v. Sec'y of Health & Human Servs.*, No. 89-2259, 1990 WL 120967 (6th Cir. Mich. August 21, 1990); *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 150 (6th Cir. 1990); *Hogg v. Sullivan*, 987 F.2d 328, 333 (6th Cir. 1992). In addition, there is in this record no indication that mental impairments rendered Plaintiff with "no useful ability to follow work rules, deal with the public, interact with supervisors, cope with work stress or relate predictably in social situations[,]" as was the case in *Walker*, 980 F.2d at 1068.

After review of the record, I conclude that the decision of ALJ Decker, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which

16

decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: July 19, 2006                             United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson and Barry F. Keller, and served in the traditional manner on Honorable David M. Lawson.


Dated: July 19, 2006                            By     s/Mary E. Dobbick
                                                                                Secretary to Magistrate Judge Binder